T.C. Memo. 2000-13

UNITED STATES TAX COURT

MARY T. KING AND FATAI O. KING, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 8599-97.                    Filed January 12, 2000.

Fatai O. King, pro se.

<u>Carol-Lynn E. Moran</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

WHALEN, <u>Judge</u>:  Respondent determined the following
deficiency in, addition to, and penalty on petitioners'
Federal income tax for 1993:

| Deficiency | Penalty and Addition to Tax | |
| | Sec. 6651(a)(1) | Sec. 6662(a) |
| --- | --- | --- |
| $27,313 | $2,736 | $5,463 |

Unless stated otherwise, all section references are to the Internal Revenue Code as in effect for the year in issue and all Rule references are the Tax Court Rules of Practice and Procedure.

The issues for decision in this case involve petitioners' return for 1993. After concessions, the issues are: (1) Whether petitioners are entitled to deduct the Schedule C expenses claimed on their return in the aggregate amount of $34,750 or the expenses allegedly proven at trial in the aggregate amount of $39,403; (2) whether petitioners are liable for the accuracy-related penalty under section 6662(a); and, (3) whether petitioners are liable for an addition to tax under section 6651(a)(1).

Petitioners have prosecuted other cases before this Court. Their return for 1992 is the subject of King v. Commissioner, T.C. Memo. 1998-69, and their return for 1994 is the subject of King v. Commissioner, T.C. Memo. 1999-293.

FINDINGS OF FACT

Petitioners are husband and wife who filed a joint individual tax return for 1993. At the time they filed the petition in this case, petitioners resided in Wyndmoor, Pennsylvania. In this opinion, references to petitioner are to Mr. Fatai O. King.

Petitioner graduated from Temple University with a bachelor's degree in computer science. He also received a master's degree in management.

During 1993, petitioner owned four newsstands in the city of Philadelphia. He operated a newsstand located in Germantown. He rented a second newsstand located on Wayne Avenue for $200 per month. He sold a third newsstand located on Knox Street on July 12, 1993, to Mr. John Ebataleye for $40,000. During 1993, petitioner received a downpayment of $5,000 from that sale and monthly payments of $972.22 for 6 months, a total of $10,832. A fourth newsstand located at Broad and Oxford Streets was closed throughout the year.

Petitioners' return for 1993 includes a Schedule C, Profit or Loss From Business, that reports net profit of $3,250 from petitioner's newsstand business, King Newsstand. The income and expenses reported on the Schedule C are as follows:

| | | |
|---|---|---|
| Gross receipts or sales | | $100,000 |
| Returns and allowances | | -- |
| Cost of good sold | | 62,000 |
| | | |
| Gross income | | 38,000 |
| | | |
| Expenses | | |
| Advertising | $500 | |
| Bad debts | 3,000 | |
| Insurance | 1,300 | |
| Mortgage interest | 2,500 | |
| Legal and professional | 2,000 | |
| Repairs and maintenance | 10,000 | |
| Supplies | 7,000 | |
| Taxes and licenses | 550 | |
| Travel | 5,300 | |
| Meals and entertainment | 1,600 | |
| Utilities | 1,000 | |
| | | 34,750 |
| | | |
| Net profit | | 3,250 |

In the subject notice of deficiency, respondent determined that the cost of goods sold for petitioner's newsstand business was $11,809, and that petitioners had overstated the cost of goods sold claimed on their 1993 return by $50,191 (i.e., $62,000 minus $11,809). Respondent also disallowed the expenses claimed on petitioners' Schedule C in the aggregate amount of $34,750 for lack of substantiation. Respondent determined that petitioners' self-employment tax liability is increased and that petitioners are allowed an additional self-employment tax deduction of $4,522 due to the increase in their self-employment tax liability.

Respondent also determined in the notice of deficiency that petitioners had failed to report interest income in the aggregate amount of $489 that they had received during 1993 from accounts at three banks. Finally, respondent determined that petitioners had failed to report "rental income" in the amount of $14,067.

At trial, petitioners introduced into evidence an amended return on Form 1040X. Petitioners had submitted the amended return to the Internal Revenue Service prior to trial, but it was never processed and the notice of deficiency is based upon petitioners' original return. The amended return claims cost of goods sold with respect to petitioner's newsstand business in the amount of $11,809, the amount determined in the notice. The amended return also reports rental income from "News Stand Rental" in the amount of $14,067, the amount determined in the notice. The Schedule C attached to the amended return reports the following income and expenses:

| | | |
|---|---:|---:|
| Gross receipts or sales | | $16,381 |
| Returns and allowances | | -- |
| Costs of goods sold | | 11,809 |
| | | |
| Gross profit | | 4,572 |
| | | |
| Other income (lottery commissions) | | 34,857 |
| | | |
| Gross income | | 39,429 |
| | | |
| Expenses | | |
| Advertising | 882 | -- |
| Bad debts | -- | -- |
| Car and truck expenses | 2,132 | -- |
| Insurance | 1,000 | -- |
| Mortgage interest | -- | -- |
| Legal and professional | 800 | -- |
| Repairs and maintenance | 7,399 | -- |
| Supplies | 1,684 | -- |
| Taxes and licenses | 1,362 | -- |
| Travel | -- | -- |
| Meals and entertainment | -- | -- |
| Utilities | 450 | -- |
| Other expenses | | |
| Telephone | 1,382 | -- |
| Independent contractors | 4,609 | -- |
| Bank charges | 518 | -- |
| PA lottery shortage | 10,561 | -- |
| United News/SEPTA-payment | 956 | -- |
| Lottery service charge | 936 | -- |
| Cleaning | 520 | -- |
| | | 35,191 |
| | | |
| Net profit | | 4,238 |

OPINION

The only issue specifically addressed in petitioners' posttrial brief is the amount of expenses petitioners are entitled to deduct in connection with their newsstand business.  They argue that at trial they proved total expenses of $39,403.

In their posttrial brief, petitioners do not take issue with respondent's determination that the cost of goods sold for their newsstand business is $11,809.  As

mentioned above, petitioners reported cost of good sold of $11,809 on their amended return.  Thus, we hereby sustain that adjustment.

In their posttrial brief, petitioners do not take issue with respondent's determination that their gross income should be increased by unreported interest income in the aggregate amount of $489.  At trial, petitioner acknowledged receiving interest income from accounts at three banks in the aggregate amount of $489 during 1993.  Thus, we hereby sustain that adjustment.

Finally, in their posttrial brief, petitioners do not take issue with respondent's determination that their gross income should be increased by unreported "rental income" of $14,067.  As mentioned above, petitioners reported "News Stand Rental" of $14,067 on their amended return.  Even though petitioners do not take issue with this adjustment, it requires discussion.

At trial, petitioner acknowledged that he had received $2,400 from the rental of his newsstand on Wayne Avenue and had received $10,833 from the sale of his newsstand on Knox Street, a deposit of $5,000 and six installment payments of $972.22 each.  Petitioners do not claim that the proceeds from the sale of the newsstand on Knox Street should be reduced by any basis in the property sold.  The total of

the unreported rental and sale payments is $13,233, or $834 less than the amount determined in the notice of deficiency, $14,067. Respondent acknowledges that the notice of deficiency should be sustained to the extent of the lesser amount, $13,233. Accordingly, we find that petitioners' gross income should be increased by unreported rental payments of $2,400 and by unreported proceeds from the sale of the newsstand on Knox Street of $10,833.

We turn to the principal issue in this case, the expenses petitioners are entitled to deduct in connection with their newsstand business. At trial, petitioners did not attempt to substantiate the expenses claimed on the Schedule C, Profit or Loss From Business, filed as part of their original return. In fact, petitioner admitted that his original return was not correct. Petitioner testified that his original return was "done by mistakes" and "was unintentionally done by me."

At trial, petitioners proceeded by attempting to substantiate the expenses claimed as deductions on the Schedule C attached to their amended return. Petitioners claimed different expenses on their original return, on their amended return, and in their posttrial brief. The following is a list of the expenses claimed by petitioners and the expenses conceded by respondent to be deductible:

| Expenses | Original Return | Amended Return | Brief | Conceded by Respondent |
|---|---|---|---|---|
| Advertising | $500 | $882 | $96 | $96.06 |
| Bad debts | 3,000 | -- | -- | -- |
| Car & truck expense | -- | 2,132 | 2,132 | -- |
| Insurance | 1,300 | 1,000 | 382 | -- |
| Mortgage | 2,500 | -- | -- | -- |
| Legal & professional | 2,000 | 800 | 800 | -- |
| Repairs & maintenance | 10,000 | 7,399 | 11,800 | [1] 50.00 |
| Supplies | 7,000 | 1,684 | 2,467 | -- |
| Taxes & license | 550 | 1,362 | 1,362 | 930.90 |
| Travel | 5,300 | -- | -- | -- |
| Meals & entertainment | 1,600 | -- | -- | -- |
| Utilities | 1,000 | -- | -- | -- |
| Telephone | -- | 1,382 | 1,382 | 426.23 |
| Electricity | -- | 450 | 450 | 400.45 |
| Independent contractors | -- | 4,609 | 4,609 | -- |
| Bank charges | -- | 518 | 950 | 233.10 |
| PA Lottery charges | -- | 936 | 936 | 936.00 |
| PA Lottery shortage | -- | 10,561 | 10,561 | -- |
| United News debt paid/Septa tokens | -- | 956 | 956 | 956.25 |
| Cleaning | -- | 520 | 520 | -- |
| Depreciation on steel plates & electrical system | -- | -- | -- | 497.50 |
| Depreciation on newsstand | -- | -- | -- | 1,435.00 |
| | 34,750 | 35,191 | 39,403 | 5,961.49 |

[1] Permit fees

We discuss each of the business expenses claimed by petitioners at trial which, generally, are the same expenses claimed by petitioners on the Schedule C filed as part of their amended return. Petitioners claimed a deduction for advertising expenses of $882 on their amended return, but at trial they introduced into evidence only two checks in the aggregate amount of $96.06 drawn to the order of the Philadelphia Enquirer. Respondent concedes that petitioners are entitled to deduct advertising expenses of $96.06.

Petitioners claim car and truck expenses of $2,132. In his testimony, petitioner acknowledged that his family used only one car during 1993 and that they used the car

for all of their personal travel. In support of their claim to be entitled to deduct car expenses in connection with their newsstand business of $2,132, they sought the introduction of three repair invoices and a handwritten sheet purporting to show gasoline purchases in cash. Two of the repair invoices in the amounts of $817.20 and $149.25 were paid in 1992 and do not have any apparent connection to 1993. They were not accepted into evidence. The third repair invoice is in the amount of $273.42, but there is no testimony or other evidence in the record to show the relationship of the expenditure to petitioner's newsstand business as opposed to petitioners' personal use of the car. Finally, petitioners have not substantiated a deduction for gasoline purchases of $892. Petitioners introduced a handwritten list entitled "car gas purchases", and petitioner testified that it is a list of the weekly cash expenditures "on the gas for traveling from the newsstand to the warehouse". There are 61 entries of even dollar amounts listed on the sheet that total $876, rather than $892. There are no dates on the list and no indication of mileage. There is no way to determine what portion of the alleged gasoline purchases was used for business and what portion was for petitioners' personal use of the car. Thus, petitioners have not substantiated any

of the alleged expenditures as required by section 274(d)(1).

In their amended return, petitioners claim insurance expenses in the aggregate amount of $1,000. At trial, petitioners introduced copies of four checks totaling $593.70. Three of those checks in the aggregate amount of $382.70 were payable to Flagship Insurance Co. Petitioner testified that those checks were for insurance on petitioners' newsstands but petitioner also acknowledged that he maintained homeowner's insurance on his residence. There is nothing in the record, other than petitioner's vague testimony, to show that the subject expenditures in the aggregate amount of $382.70 were for insurance on the newsstands. Petitioners introduced no documents to corroborate Mr. King's testimony, such as invoices or insurance polices. Accordingly, we agree with respondent that the expenditures reflected by the three checks in the aggregate amount of $382.70 are not deductible. The fourth check in the amount of $211 is payable to Pennsylvania Auto Insurance Plan. The expenditure reflected by this check appears to be for insurance on petitioners' automobile. It is not an allowable expense because petitioners have provided no way to allocate the expenditure between their personal and business use of the automobile, and, thus,

they have not substantiated the business nature of the expense.  See sec. 274(d)(1).

Petitioners claim legal and professional fees in the amount of $800.  Of this amount, $300 was paid as a retainer to a lawyer for advice regarding petitioner's citizenship.  Petitioners have not established that this expenditure is related to their business.  In the case of the other expenditure in the amount of $500, petitioners did not submit an invoice from the attorney or any other information regarding this expenditure, and petitioner's testimony that he sought advice concerning a possible suit against the city of Philadelphia is too vague to substantiate the nature of the expenditure.  We are not satisfied that petitioners have proven that either expenditure is a deductible business expense.

Petitioners claim a deduction for repairs and main-tenance in the amount of $11,800.  On brief, respondent concedes that petitioners made capital expenditures in the aggregate amount of $14,050 during 1993.  Respondent concedes that petitioner paid $4,100 for construction work at the newsstand at Broad and Oxford Streets.  Respondent also concedes that he paid $1,750 for the installation of steel plates and bars in the newsstand at Broad and Oxford Streets.  Finally, respondent concedes that petitioner paid

$5,700 for excavation and concrete work in connection with the installation of an electrical system at his newsstand on Wayne and Chelten Avenues and he paid $2,500 for the wiring of that system. Respondent also concedes that petitioner paid permit fees in the aggregate amount of $50 in connection with the electrical work.

We agree with respondent that, except for the permit fees, the above payments represent capital expenditures that must be recovered through depreciation. According to respondent, petitioners are entitled to a depreciation deduction of $497.50 with respect to the installation of the steel plates ($1,750) and electrical system ($2,500 and $5,700), and a depreciation deduction of $1,435 for the expenditures attributable to the construction of the new newsstand ($4,100). The depreciation deductions computed by respondent appear to be correct but, if petitioners do not agree with the amount of these depreciation deductions, then they will have an opportunity to raise their disagreement during the proceedings under Rule 155. Respondent also concedes that petitioners are entitled to deduct permit fees in the aggregate amount of $50.

Petitioners claim a deduction in the amount of $2,467 for supplies. In support thereof, petitioners introduced

11 checks made out to banks and credit card companies in the aggregate amount of $4,166.31. According to notations on the checks, the expenditures were to purchase racks, safes, air conditioners, and other equipment. However, the notations were written in different ink and petitioners introduced no invoices. Petitioner's testimony was vague and inconsistent. In sum, we are not satisfied that petitioners have substantiated the nature of the expenditures claimed.

Petitioners claim a deduction of $1,362 for taxes and licenses. In support thereof, they introduced copies of 15 checks totaling $1,052.90. Respondent conceded $890.90 of these expenditures at trial and conceded an additional $40 on brief for a total of $930.90. The following is a list of the checks that shows which checks have been agreed by respondent and which checks were not agreed:

| Check No. | Payee | Claimed | Agreed | Not Agreed |
|---|---|---|---|---|
| 1707 | Dept. of Revenue City of Phila. | $200.00 | $200.00 | -- |
| 1706 | Dept. of Revenue City of Phila. | 200.00 | 200.00 | -- |
| 1695 | Dept. of L&I | 80.00 | 80.00 | – |
| 1680 | Dept. of L&I | 40.00 | 40.00 | -- |
| 1681 | Dept. of L&I | 40.00 | 40.00 | – |
| 1682 | Dept. of L&I | 40.00 | 40.00 | – |
| 1694 | Dept. of L&I | 80.00 | 80.00 | – |
| 1315 | City of Phila. | 40.00 | 40.00 | – |
| 1357 | City of Phila. | 15.00 | -- | $15.00 |
| 1665 | Pa. Revenue Dept. | 27.00 | -- | 27.00 |
| 1635 | Pa. Lottery | 15.00 | 15.00 | – |
| 1748 | Pa. Revenue | 75.00 | 75.00 | – |
| 1747 | Pa. Revenue | 68.90 | 68.90 | – |
| 1705 | Dept. of State | 52.00 | 52.00 | – |
| 1709 | Dept. of State | 80.00 | -- | 80.00 |
| | | 1,052.90 | 930.90 | 122.00 |

At trial, petitioner stated that he was not claiming the expenditure reflected on check No. 1357 in the amount of $15 or the expenditure reflected on check No. 1709 in the amount of $80. The last unagreed item, check No. 1665 made payable to Pennsylvania Revenue Department in the amount of $27, was a payment for State income tax. Because petitioners did not itemize deductions, they are not entitled to a deduction for that expenditure. Accordingly, we agree with respondent that petitioners are entitled to a deduction in the aggregate amount of $930.90 for payments of taxes and licenses.

Petitioners claim a deduction for payments made to PECO for the electricity used at petitioner's newsstands. In support thereof, petitioners introduced 11 checks payable to PECO in the aggregate amount of $450.45. Respondent notes that one of those checks, check No. 1629, in the amount of $50, was returned by the bank without payment for "non-sufficient funds". Accordingly, respondent argues, "petitioners provided $400.45 of substantiation for electricity expense." We agree with respondent that petitioners have substantiated electricity expenses of $400.45.

Petitioners also claim a deduction for telephone expenses in the aggregate amount of $1,377.81. In support

thereof, petitioners introduced 13 checks payable to "Bell of Pennsylvania". Respondent notes that five of those checks, in the aggregate amount of $426.23, bear notations to show that they were paid with respect to a telephone number assigned to petitioners' newsstand at Germantown Avenue. Respondent appears to concede that those checks are deductible. Respondent also notes that six of the checks, in the aggregate amount of $762.58, bear notations which suggest that they were paid with respect to a telephone number assigned to the newsstand at Broad and Oxford Streets. Petitioner initially testified that that newsstand was closed during the entire year. He then changed his testimony to say that the newsstand at Broad and Oxford Streets was open on the weekends when inspectors from the Department of Licenses and Inspections were not working. We agree with respondent that petitioner's vague and contradictory testimony does not substantiate those checks. Similarly, two checks in the aggregate amount of $189 bear no notation and we agree with respondent that petitioners have not substantiated those checks. Accordingly, we agree with respondent that petitioner is entitled to a deduction for utilities in the aggregate amount of $826.68, $400.45 for payments to PECO for

electricity, and $426.23 for payments to Bell of Pennsylvania for telephone expenses.

Petitioners claim a deduction in the amount $4,609.09 for payments allegedly made to independent contractors. Petitioners rely on 11 checks to substantiate that deduction. The following is a list of the check number, date, payee, amount, and notation taken from the checks:

| Check No. | Date | Payee | Amount | Notation |
|---|---|---|---|---|
| 2030 | 03/08/93 | William H. Randleman | $500.00 | 711 Employee for 5+3 days |
| 2032 | 05/06/93 | Randy L. Baptist | 300.00 | 5 day pay employee |
| 1004 | 05/11/93 | John Ebatebeye | 146.69 | Wk 1 -at Knox |
| 2035 | 06/02/93 | John Ebatebeye | 275.67 | Week 22-23 5/18-6/1/93 |
| 2037 | 06/14/93 | John Ebatebeye | 507.24 | Wk 22/23 |
| 2038 | 06/29/93 | John Ebatebeye | 437.05 | Week |
| 2039 | 07/22/93 | John Ebatebeye | 900.82 | Wk 26, 27 & 28 |
| 2051 | 08/02/93 | Veresta B. Hyman | 500.00 | #15155 (*$1) |
| 2052 | 08/02/93 | Florence Young | 250.00 | #11555 (4 days) |
| 7330 | 08/07/93 | John Ebatebeye | 686.62 | two at Knox lottery |
| 2062 | 11/30/93 | John Ebatebeye | 105.00 | 5 pk of Instant Tickets |
| | | | 4,609.09 | |

Petitioner's testimony concerning the above-alleged payments to independent contractors is vague, contradictory, and unworthy of belief. For example, in the case of payments made to Messrs. Randleman and Baptist, Ms. Hyman, and Ms. Young, there is evidence that those individuals were lottery winners and that the above checks drawn to their order are payments of their winnings, and not for services operating a newsstand.

Similarly, we cannot determine the nature of the payments allegedly made to Mr. John Ebatebeye. According to petitioner's testimony, Mr. Ebatebeye purchased the

newsstand at Knox Street on or about July 12, 1993.  Prior to that time, petitioner claims to have paid Mr. Ebatebeye to operate the newsstand.  Petitioner's testimony concerning the nature of those payments is vague, confusing, and contradictory.  For example, he could not explain how the payments were calculated, and several checks are dated after July 12, 1993.  Based upon the record, we find that petitioners have not substantiated their eligibility to deduct these payments.

Petitioners claim a deduction of $950 for bank charges.  In support thereof, they introduced bank statements from four business accounts maintained at PNC Bank.  The statements show bank charges totaling $903.10.  Two types of bank charges are reflected on the statements, charges in the aggregate amount of $670 for returned checks and charges in the aggregate amount of $233.10 that are described on the statements as "analysis charge".  Respondent's posttrial brief does not address these charges.  In his testimony, petitioner makes reference to a service charge for "bank analysis".  He does not discuss the bank charges, in the aggregate amount of $670, for returned checks or provide any facts from which we can find that those charges are ordinary and necessary expenses of his newsstand business.  Cf. <u>Bailey v. Commissioner</u>,

T.C. Memo. 1991-385. We find that the bank statements substantiate petitioner's testimony regarding the charges in the aggregate amount of $233.10 that are labeled as "analysis charges".

Petitioners also claim a deduction in the amount of $936 for lottery service charges. Respondent concedes the deductibility of that amount.

Petitioners claim a deduction for payments to the Pennsylvania Lottery in the amount of $10,561. In support thereof, they introduced a check drawn by petitioner to the order of "cash" in the amount of $2,200 and a check drawn by petitioner to his own order in the amount of $8,361.15. They also introduced the copy of a cashier's check that appears to be drawn to the order of the Pennsylvania Lottery in the amount of $8,361.15. Petitioner testified: "The Pa Lottery, I owe them $10,562 because I lost the tickets." Petitioners introduced no invoices or correspondence from the Pennsylvania Lottery regarding these alleged payments, and they did not deduct these payments on their original return. Petitioner's testimony concerning the nature of these payments is vague, confusing, and unbelievable. We find that petitioners have not substantiated their eligibility to deduct these payments.

Petitioners claim a deduction in the amount of $956 described on their amended return as "United News/Septa-payment". In support thereof, they rely on two checks, one drawn to the order of United News (Levy) in the amount of $300, and the second drawn to the order of Septa in the amount of $656.25. Respondent conceded the deductibility of those payments at trial.

Petitioners claim a deduction for $520 attributable to the cash payments allegedly given to a cleaning woman "to clean the place". In support of their claim, petitioner introduced a handwritten sheet purporting to show 26 cash payments totaling $560. There are 20 payments of $20, 4 payments of $25, and 2 payments of $30. The ledger sheet identifies the cleaning woman as "Gloria Ashers". In his testimony, petitioner said: "I pay her $20, $10 sometime, and I have the record that I wrote down." He identified the cleaning woman as Gloria Lashley, "L-A-S-H-L-E-Y-." When petitioner was asked what the cleaning woman cleaned, he replied: "The front because the place is dirty, because people come, they drink, they throw bottle, they break it. So I have to pay for that because when the Street Department come they give me citation before." Petitioner's testimony is vague, and we find that petitioners have not

substantiated these alleged cash expenditures in the aggregate amount of $520.

The next issue for decision is whether petitioners are liable for the accuracy-related penalty under section 6662(a) for 1993. At the outset, we note that in the notice of deficiency, the amount of the addition to tax for delinquency under section 6651(a)(1), $2,736, is switched with the amount of the penalty for substantial understatement under section 6662(a), $5,463, and vice versa. This appears to be a typographical error. The notice makes reference to an enclosed statement that "shows how [respondent] figured the deficiency." The enclosed statement shows respondent's computation of the additions to tax for delinquency and the penalty for substantial understatement and relates these amounts to the appropriate statutory provisions. Petitioners did not make an issue of this error in their petition or at trial, and there is no evidence that they were uncertain about the amounts that were determined by respondent. Thus, we need not address this matter. See Goodman v. Commissioner, T.C. Memo. 1985-151 (relying on Mayerson v. Commissioner, 47 T.C. 340 (1966)).

Respondent determined that petitioners are liable for an accuracy-related penalty of $5,463 under section

6662(a).  Under section 6662, a penalty is added to a
taxpayer's tax liability if any portion of an underpayment
is attributable to negligence or disregard of the rules or
regulations, see sec. 6662(b)(1), or attributable to a
substantial understatement of income tax, see sec.
6662(b)(2).  For this purpose, an understatement is
"substantial" if it exceeds the greater of $5,000 or 10
percent of the tax required to be shown on the taxpayer's
return.  Sec. 6662(d).  The amount of the penalty is 20
percent of the portion of the underpayment to which the
section applies.  See sec. 6662(a).

In this case, petitioners' understatement was
substantial.  Petitioners did not address this issue at
trial, in their petition, trial memorandum, or posttrial
brief.  By failing to address the issue, petitioners have
conceded it.  See, e.g., <u>Money v. Commissioner</u>, 89 T.C. 46,
48 (1987).  Accordingly, we sustain respondent's
determination that petitioners are liable for the accuracy-
related penalty.

The final issue for decision is whether petitioners
are liable for an addition to tax under section 6651(a)(1)
for 1993.  If a taxpayer fails to file an income tax return
on time, section 6651(a)(1) imposes an addition to tax
unless the failure was "due to reasonable cause and not

willful neglect".  The addition is 5 percent of the amount of the tax required to be shown on the return for each month the failure continues, not exceeding 25 percent in the aggregate.

In this case, petitioners filed their return more than 1 month after the due date.  Respondent determined that petitioners are liable for an addition to tax of $2,736 pursuant to section 6651(a)(1).  Petitioners did not address this issue in their petition, in their trial memorandum, at trial, or in their posttrial brief.  By failing to address the issue, petitioners have conceded it.  See Money v. Commissioner, supra.  Accordingly, we find petitioners are liable for an addition to tax under section 6651(a)(1).

Based upon the foregoing,

Decision will be entered under Rule 155.